FILED

APR 12 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

WALTER PECK,

Petitioner,

v.

DON MILLS,

Respondent.

Civil No. 08-1299-PK

FINDINGS AND RECOMMENDATION

Kristina Hellman
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

Attorney for Petitioner

John R. Kroger
Attorney General
Andrew Hallman
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97301

Attorneys for Respondent

PAPAK, Magistrate Judge.

Petitioner Walter Peck brings this habeas corpus action pursuant to 28 U.S.C. § 2254 challenging the Oregon Board of Parole and Post-Prison Supervision's ("Board") failure to automatically revoke his parole upon his new conviction in March 2004. For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#19) should be denied, and Judgment should be entered dismissing this action with prejudice.

**BACKGROUND**

On October 24, 1986, Peck was convicted of Robbery in the First Degree and the court imposed a 20-year indeterminate sentence. Respondent's Exhibit 101. On March 16, 2004, while on parole, Peck was convicted of Sexual Abuse in the First Degree and the court imposed a 75-month sentence. Id. The Board revoked Peck's parole on October 8, 2004 and on January 12, 2005, it held a future disposition hearing setting Peck's release date at September 10, 2013 (BAF #27). Respondent's Exhibits 102 & 103.

Peck filed a timely administrative review request of BAF #27. In its response dated June 29, 2005, the Board denied relief on the merits and advised Peck he had 60 days to petition the Oregon Court of Appeals for judicial review. Respondent's Exhibit 105. Peck did not file his first Petition for Judicial Review with the Oregon Court of Appeals until October 30, 2006. Respondent's Exhibit 114.

On March 27, 2006, Peck petitioned the Board to reopen his case on the ground that the Board failed to hold his revocation hearing within a reasonable amount of time. Respondent's Exhibit 106. On July 6, 2006, having no response from the Board, Peck sent a letter reiterating his objection based on ORS 144.345 to the Board holding a Morrisey hearing 199 days after he was back in prison on a new charge:

> all rules are used to decide what happens then on the day my parole terminated Mar 16th 2004 were in effect and since I was no longer being held on anything else that would mean that ORS 144-341 - would be back in effect as of Mar 16 2004, and that the Board at that point only had 15 days to initiate further proceedings! Not 199 days almost 7 months after I'm back in prison.

Respondent's Exhibit 107, p. 2. In its response dated August 24, 2006, the Board denied Peck's petition related to the timing of his Morrisey hearing on the basis that he could have raised this argument in his prior request for administrative review. Respondent's Exhibit 108.

In March 2007, Peck again petitioned the Board to reopen his case asserting that he did not previously know the Board was subject to time limits and alleging that it had violated his due process rights when it revoked his parole on October 8, 2004. Respondent's Exhibit 109. In its response dated July 19, 2007, the Board interpreted this petition as one challenging its October 2004 revocation order. In denying this petition, the Board found Peck "could have raised [his] arguments in a timely request for

administrative review of [his] Order of Revocation, which he failed to do." Respondent's Exhibit 110.

On December 22, 2007 and January 6, 2008, Peck sent letters to the Board's Executive Director, Nancy Sellers.[1] In his December 2007 letter he advised Ms. Sellers that: (1) the Board waited 199 days after he was sentenced on a new charge to hold a parole violation/Morrisey hearing; (2) pursuant to ORS 144.345, such hearing was never to have taken place; and (3) the Board decided to revoke his parole 207 days after he was sentenced to prison on March 16, 2004 causing him to lose 69 days of good time credit in violation of his right to due process. Peck raised similar claims in his January 2008 letter. In addition, he complained that further submission to the Board would be futile because it had already advised him that he had missed his window of opportunity.

In its response dated February 4, 2008, the Board construed Peck's letters as a request to reopen and reconsider the Order of Revocation dated October 8, 2004 and BAF #27 and denied the request, citing interests of administrative efficiency and finality of board orders and the fact that Peck "could have raised [his] arguments in a timely request for administrative review of [his] Order of Revocation, which he failed to do, or in [his] timely request for administrative review of BAF #27, to which [he]

---

[1] Peck's briefs in this action indicate that he presented the claim set forth in his Amended Petition to the Board in these letters to Ms. Sellers. Amended Petition (#19), p. 1; Brief in Support (#32), pp. 2 & 8; and Reply (#39), pp. 2-3.

received a response in Administrative Review Response (ARR) #4." Respondent's Exhibit 113.

The Court notes that Peck petitioned the Oregon Court of Appeals for judicial review of the Board's various actions on October 30, 2006, September 26, 2007 and March 26, 2008 (Case Nos. A133848, A136840, and A138425). However, in each case, he voluntarily moved to dismiss his appeals on the ground he "no longer desire[d] to proceed." Respondent's Exhibits 115, 119 & 123.

On November 3, 2008, Peck filed this action. His ground for relief as set forth in his Amended Petition is as follows:

> Mr. Peck pleads on information, belief, and/or personal knowledge that his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution were violated when, instead of automatically revoking his parole as required by Or. Rev. Stat. § 144.345(2) on March 16, 2004, the date of his new criminal conviction, the Oregon Board of Parole and Post-Prison Supervision held a parole revocation hearing 204 days after Mr. Peck's conviction and placed his revocation date on October 8, 2004. Mr. Peck is prejudiced by the Board's failure to follow well-established Oregon law because he is deprived of at least 69 days of earned time credits under Or. Rev. Stat. § 421.120.

Respondent asks the court to deny relief on the Amended Petition because: (1) Peck did not file his federal habeas petition within the one-year AEDPA statute of limitations; (2) his claim is procedurally defaulted, and the default is not excused; and (3) his claim is without merit.

///

**DISCUSSION**

**I. Exhaustion and Procedural Default**

**A. Standards**

A habeas petitioner must exhaust his claims by presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. Rose v. Lundy, 455 U.S. 509, 519 (1982). "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)). If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim

unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986). Alternatively, a litigant may be excused from the exhaustion requirement if he can show that there is either an absence of available state corrective process, or that circumstances exist that render the process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254 (b)(1)(B).

**B. Analysis**

As noted above, Peck voluntarily dismissed all of his appeals from Board decisions pending before the Oregon Court of Appeals on the basis that he no longer wished to proceed. Accordingly, he never presented the subject claim to Oregon's appellate courts in a procedural context in which its merit was considered. Nevertheless, Peck contends that "no Oregon court had jurisdiction to consider his appeal from the Board's denial of his request to reopen and reconsider," and consequently, there was an absence of state corrective process which excuses him from the general exhaustion requirement. Brief in Support (#32), p. 1 (citing Mastriano v. Board of Parole, 159 P.3d 1151, 1152 (Or. 2007)(Oregon Supreme Court held that a Board decision denying an inmate's motion

to reopen and reconsider a past decision could not be challenged on judicial review)).

Peck relies on Mastriano to suggest that in his case the Oregon appellate courts' lack of jurisdiction over the Board's 2008 denial of what it construed as a request to reopen and reconsider amounted to an absence of state corrective process to exhaust the claim he presents in this federal habeas action related to the Board's failure to automatically revoke his parole. The court is not persuaded by this argument because even if the Board's denial of his request to reopen and reconsider was not reviewable, Peck has not demonstrated that he could not have discovered and raised this claim in his initial request for administrative review and then timely petitioned the Oregon Court of Appeals for judicial review of any subsequent Board denial.

The court notes that in requesting to reopen and reconsider the Board's prior denials, Peck contended that he "did not know" the Board was subject to time limits. However, mere assertion that he was unaware of these limits, absent any showing that he could not have or was prevented from discovering them, does not excuse his failure to raise his claim in his initial, timely request for administrative review. Accordingly, the court rejects Peck's contention that there was an absence of state corrective process excusing him from the exhaustion requirement.

Peck alternatively suggests that by presenting his claim to the Board via a petition to reopen and reconsider he invoked an

established state process and "provided the Board with [a] 'fair opportunity' to consider the merits of his due process claim, and thus satisfied the exhaustion requirement." Reply (#39), p. 2. The court rejects this argument for two reasons. First, as noted above, Peck failed to pursue an available avenue for presentation of this claim to the Oregon courts. Second, the Board denied Peck's petitions to reopen and reconsider on the basis he could have raised the claims in a timely request for administrative review:

> The arguments you have provided do not warrant reopening and reconsidering your case. Interests of administrative efficiency and finality of board orders militate against reopening and reconsidering a final board order based on issues that could have been raised through established procedures for administrative review. You could have raised your arguments in a **timely** request for administrative review of your Order of Revocation, which you failed to do, or in your **timely** request for administrative review of BAF #27.

Respondent's Exhibit 113 (emphasis added). Though Peck insists the Board did not find his request to reopen and reconsider untimely, the court is satisfied that the Board, in denying his request, invoked an independent and adequate state procedural rule related to timeliness. Coleman, 501 U.S. at 729-30.

Finally, Peck contends he can demonstrate cause and prejudice to excuse any procedural default of his claim. He asserts that the Oregon courts' lack of jurisdiction over claims arising from the Board's denial of his request to reopen and reconsider constitutes "an objective factor that is external to [him] and that cannot

fairly be attributed to him." Brief in Support (#32), p. 12 (citing Manning v. Foster, 224 F.3d 1129, 1133 (9th Cir. 2000)). Once again, this argument glosses over the fact that Peck could have raised the subject claim related to the Board's failure to automatically revoke his parole in his initial request for administrative review and then timely petitioned the Oregon Court of Appeals for judicial review of any subsequent Board denial. Beyond his bare asserttion that he was unaware of the Board's time limits, Peck makes no attempt to demonstrate why he could not have discovered such limits related to automatic revocation of his parole prior to the filing of his initial request for administrative review. Based on the foregoing, the court finds Peck's claim is procedurally defaulted and that such default is not excused.

## II. AEDPA Statute of Limitations

Because the court has concluded that Peck's claim is procedurally defaulted, it need not address whether he also failed to comply with the federal statute of limitations. Cooper v. Neven, ___ F.3d ___, 2011 WL 1204201, *4 (9th Cir. 2011)(where the procedural default issue is dispositive, the court need not consider alternative reasons for dismissing the petition). Nevertheless, the court notes that the AEDPA "one-year limitation period applies to all habeas petitions filed by persons in 'custody pursuant to the judgment of a State court,' even if the petition

challenges a pertinent administrative decision rather than a state court judgment." Shelby v. Bartlett, 391 F.3d 1061, 1063 (9th Cir. 2004)(citing 28 U.S.C. § 2244(d)(1)). Peck's argument that he filed this federal habeas petition within the one-year statute of limitations rests on his contention that under Oregon law there is no time limit for filing a petition to reopen and reconsider a Board decision. He reasons that so long as he filed his federal habeas petition within a year of the Board's denial of his 2008 petition to reopen and reconsider, the claims presented that petition are timely. The court disagrees.

Despite Peck's insistence that he seeks only to challenge the Board's denial of his 2008 request to reopen and reconsider, at core he alleges the Board's revocation of his Parole on October 8, 2004 and its January 12, 2005 future disposition hearing and setting of his release date (BAF #27) were unlawful. Accordingly, giving Peck every benefit, he had 60 days from the Board's denial of his initial request for administrative review of BAF #27, or until August 28, 2005, to petition the Oregon Court of Appeals for judicial review. Under §2244(d)(1)(A), the AEDPA one-year statute of limitations begins running on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Thus, at the latest, the administrative action at issue here was "final" on August 28, 2005.

The Board's denial of Peck's 2008 request to reopen and reconsider its 2004 and 2005 decisions surrounding his parole

revocation is not a "factual predicate" of Peck's habeas claim for the purpose of triggering the AEDPA's statute of limitations under §2244(d)(1)(D). The only basis supporting Peck's 2008 request is the Board's allegedly unlawful actions taken in October 2004 and January 2005 surrounding his parole revocation, which he has failed to show he could not have discovered prior to filing for administrative review. Peck's arguments notwithstanding, the statute of limitations does not reset simply because a petitioner files, and thus forces, an administrative agency to address whether to exercise its discretion to reopen and reconsider an action it took years prior. Accordingly, the court finds Peck cannot establish that he filed his habeas petition within the AEDPA one-year statute of limitations.

## RECOMMENDATION

Based on the foregoing, the Amended Petition for Writ of Habeas Corpus (#19) should be DENIED, and judgment should enter DISMISSING this case with prejudice.

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

**NOTICE**

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

In addition, the district judge should certify that Peck has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2). This case is not appropriate for appellate review.

DATED this 12th day of April, 2011.

Paul Papak
United States Magistrate Judge